**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

WIND POINT PARTNERS VII-A, L.P.,   )
                                    )
          Plaintiff,           )
                                    )
          v.                 )     C.A. No. N19C-08-260 EMD CCLD
                                    )
INSIGHT EQUITY A.P. X COMPANY,   )
LLC; INSIGHT EQUITY VISION      )
PARTNERS, LP; INSIGHT EQUITY     )
MANAGEMENT COMPANY, LLC;      )
ROSEWOOD VISION CORPORATION;  )
and ROSEWOOD PRIVATE         )
INVESTMENTS, INC.,            )
                                    )
          Defendants.       )

Submitted:  September 8, 2020
Decided: September 15, 2020

**ORDER REFUSING TO CERTIFY DEFENDANTS' APPLICATION
FOR CERTIFICATION OF INTERLOCUTORY APPEAL**

This 15th day of September, 2018, upon consideration of Defendants' Application for

Certification of an Interlocutory Appeal (the "Application") filed by Defendants' Defendants

Insight Equity A.P. X Company, LLC ("Insight LLC"), Insight Equity Vision Partners, LP

("Insight LP"), Insight Equity Management Company, LLC ("Insight Equity Management"),

Rosewood Vision Corporation ("Rosewood Vision"), and Rosewood Private Investments, Inc.

("Rosewood Private Investments") (collectively "Defendants") on August 27, 2020; Plaintiffs'

Opposition to Defendants' Application for Certification of an Interlocutory Appeal (the

"Response") filed by Plaintiff Wind Point Partners VII-A, L.P. ("Wind Point"); the Court's

Opinion dated August 17, 2020 (the "Opinion"); Supreme Court Rule 42 ("Rule 42"); and this

civil action's entire record:

## APPLICABLE STANDARD

1.      Rule 42(b) dictates the standard for certifying an interlocutory appeal.  "No interlocutory appeal will be certified by the trial court or accepted by this Court unless the order of the trial court decides a substantial issue of material importance that merits appellate review before a final judgment."[1]  In deciding whether to certify an interlocutory appeal, the trial court must consider: (1) the eight factors listed in Rule 42(b)(iii);[2] (2) the most efficient and just schedule to resolve the case; and (3) whether and why the likely benefits of interlocutory review outweigh the probable costs, such that interlocutory review is in the interests of justice.[3]  "If the balance [of these considerations] is uncertain, the trial court should refuse to certify the interlocutory appeal."[4]

2.      Initially, the Court must determine if the Opinion that Defendants seek certification of "decides a substantial issue of material importance that merits appellate review before a final judgment."[5]  The "substantial issue of material importance" prong of Rule 42 requires that the matter decided goes to the merits of the case.[6]  Defendants, in form and essence, object to the Court's interpretation and application of the language of SPA Section 9.1.[7]

---

[1] Del. Supr. Ct. R. 42(b)(i).
[2] Delaware Supreme Court Rule 42(b)(iii) provides that the trial court should consider whether:
   (A) The interlocutory order involves a question of law resolved for the first time in this State;
   (B) The decisions of the trial courts are conflicting upon the question of law;
   (C) The question of law relates to the constitutionality, construction, or application of a statute of this State, which has not been, but should be, settled by this Court in advance of an appeal from a final order;
   (D) The interlocutory order has sustained the controverted jurisdiction of the trial court;
   (E) The interlocutory order has reversed or set aside a prior decision of the trial court, a jury, or an administrative agency from which an appeal was taken to the trial court which had decided a significant issue and a review of the interlocutory order may terminate the litigation, substantially reduce further litigation, or otherwise serve considerations of justice;
   (F) The interlocutory order has vacated or opened a judgment of the trial court;
   (G) Review of the interlocutory order may terminate the litigation; or
   (H) Review of the interlocutory order may serve considerations of justice.  *See* Del. Supr. Ct. R. 42(b)(iii).
[3] *Id.*
[4] *Id.*
[5] *Id.* 42(b)(i).
[6] *Id.*
[7] SPA shall have that meaning in the Opinion.

2

3. "As a general matter, issues of contract interpretation are not worthy of interlocutory appeal."[8] The Defendants' motion to dismiss required the Court me to interpret the unambiguous provisions of the SPA. On the threshold requirement of a substantial issue of material importance, alone, the Court would deny certification of the Application.[9] For completeness, however, the Court will also consider the factors set forth in Supreme Court Rule 42(b)(iii).

## PARTIES CONTENTIONS

4. Through the Opinion, the Court granted Defendants' motion to dismiss in part and denied it in part. The Court dismissed the breach of contract claim (Count III) as untimely.[10] The Court also held that Wind Point properly plead (i) a fraud claim ((Count I) and (ii) a Texas Securities Act ("TSA") claim (Count III).[11] Wind Point seeks recovery for damages from all Defendants on Counts I and III.

5. On the fraud claim, the Court considered and rejected Defendants' argument that the SPA Section 9.1 applied to the fraud claim against Rosewood and Insight.[12] The Opinion provides:

> The fraudulent inducement claim is based on Defendants' verification of the QOE and concealment of information during due diligence. Specifically, Wind Point prepared the QOE and then asked Vision Ease to verify the QOE. Wind Point alleges that Faber, acting on behalf of Defendants, falsely confirmed it was accurate and reliable. Since Wind Point's fraud claim is based on conduct that is separate

---

[8] *REJV5 AWH Orlando, LLC v. AWH Orlando Member, LLC*, 2018 WL 1109650, at *3 (Del. Ch. Feb. 28, 2018).
[9] *See, e.g., Steadfast Ins. Co. v. DBI Servs. LLC,* 221 A.3d 527 (Del. 2019) (TABLE) (denying interlocutory appeal that involved issues of contract interpretation); *Lexington Ins. Co. v. Almah LLC*, 167 A.3d 499 (Del. 2016) (TABLE) (denying interlocutory appeal upon noting the "dispute turn[s] on issues of contract interpretation"); *Robino–Bay Court Plaza, LLC v. West Willow–Bay Court, LLC*, 941 A.2d 1019 (Del. 2007) (TABLE) (declining to grant interlocutory appeal of this court's construction of the operative contract); *McKnight v. USAA Cas. Ins. Co.*, 872 A.2d 959 (Del. 2005) (TABLE) (declining interlocutory appeal where "the trial court applied well-established principles of contract interpretation and thus the case did not involve a matter of first impression").
[10] Op. at 22.
[11] *Id*.
[12] *Id*. at 28, 30-31.

and distinct from the conduct that constitutes a breach of the SPA, it is not subject to the contractual limitations of remedies in the SPA.[13]

The Court also analyzed whether SPA Section 9.1 would bar Wind Point's fraud claim. The Court held that SPA Section 9.1 would not bar the fraud claim.[14]

6. Defendants assert that the Application meets the criteria set forth in Rule 42(b)(iii)(B), (G) and (H). The Defendants claim that: (i) the Opinion—as to its analysis of SPA Section 9.1—conflicts with other Delaware trial court decisions; (ii) an interlocutory appeal could terminate the litigation as to Insight Equity Management and Rosewood Private Investments; and (iii) an interlocutory appeal will serve the interests of justice because such an appeal will resolve the split in trial court decisions regarding the legal standard to be applied to anti-reliance provisions. In essence, Defendants make the same arguments under Rule 42(b)(iii)(B) and (H).

7. Wind Point opposes interlocutory appeal of the Opinion. In the Response, Wind Point argues that the Opinion does not conflict with the decisions of other Delaware trial courts. Wind Point contends that a review of the Opinion will not necessarily terminate this civil action. Finally, Wind Point disputes that the interests of justice will not be served through an interlocutory appeal.

**DISCUSSON**

8. The Court agrees with the arguments made in the Response. The Opinion held that Wind Point properly plead a fraud claim against Defendants and, alternatively, that SPA Section 9.1 does not act as a bar on Wind Point's fraud claim. Moreover, the Court does not find that its decision conflicts with other Delaware trial courts decisions on the scope of anti-reliance

---

[13] *Id*. at 28.
[14] *Id*. at 30-34.

provisions.  Finally, an interlocutory appeal would not terminate this civil action as to any Defendant.  The Court notes that an appeal of its alternative ruling as to SPA Section 9.1 would not necessarily mean that Count I would not proceed.  In addition, Count II is a claim made against all Defendants and would proceed even if Count I were dismissed on appeal.

9.      The Court does not find that the Opinion conflicts with similar decisions by other Delaware trial courts.  The Court has, once again, reviewed the cases cited by Defendants and believes the Opinion is consistent with existing law.  The Court continues to believe that the Opinion merely clarifies that the decision in *TransDigm* still applies under certain circumstances even though other cases have limited its application.[15]  In short, a claim based on only an alleged omission would be barred by the anti-reliance language used in a contract, but the alleged active fraudulent concealment of an omission would not be barred by a clause like SPA Section 9.1.  Unlike in the cases cited by Defendants, the Court found that Wind Point has adequately pleaded fraudulent concealment in the Complaint.  Because of the alleged affirmative actions to conceal in addition to the omitted representation, the alleged conduct constitutes a claim that is not barred by the anti-reliance language.

10.      The cases cited by Defendants are distinguishable.  For instance, in *Infomedia Group, Inc. v. Orange Health Solutions, Inc.,*[16] the Court specifically noted that *TransDigm* would not apply because (i) the contract was different than the one in *TransDigm,* and (ii) plaintiff failed to allege facts that demonstrated fraudulent concealment.[17]  Similarly, in *Prairie Capital III, L.P. v. Double E Holding Corp.*,[18] the Court found that plaintiff did not adequately

---

[15] *See, e.g.*, Op. at 33-34.
[16] 2020 WL 4384087 (Del. Super. July 31, 2020).
[17] *Id*. at *8-9.
[18] 132 A.3d 35 (Del. Ch. 2015).

plead a fraudulent concealment case. The *Prairie Capital* court explicitly stated that the plaintiff had just reframed what actually were just alleged misrepresentations as omissions.[19]

11. Contrary to Defendants' interpretation, in *Universal American Corp. v. Partners Healthcare Solutions Holdings, L.P.* ("United Health II"),[20] the District Court found that the allegations of active concealment of the true state of the company against the company's officers would survive a motion to dismiss despite (i) its finding that merger agreement's anti-reliance provision barred claims to the extent they were based merely on extra-contractual statements and omissions and (ii) the fact that two of the three officers had not signed any agreement certifying the representations of the company.[21] Although non-signatories of the agreement, the officers were found by the Court to have actively participated in the transaction and it was "reasonably conceivable" that their "involvement in the negotiation and sale, 'caused [the company] to make ... false representation[s] in the [Merger Agreement]."[22] Similarly, here, the Court finds it is reasonably conceivable that Defendants' alleged active concealment of the true state of Vision Ease during due diligence caused the false representations in the SPA.[23] This purported wrongful conduct goes "beyond the breach of the contract itself."[24] Moreover, as Defendants have to concede, the District Court in United Health II did not explicitly note that it was overruling its former opinion, United Health I[25] (which was cited to in the Opinion), as both rulings are consistent with one another.

---

[19] *Id*. at 53–57.
[20] 176 F. Supp.3d 387 (D. Del. 2016).
[21] *Id*. at 403–04.
[22] *Id*. at 404 (citing *Anvil Holding Corp. v. Iron Acquisition Co.*, 2013 WL 2249655, at *7 (Del. Ch. May 17, 2013).
[23] *Id*.
[24] *See id.* at 403 ("Even an intentional, knowing, wanton, or malicious action by the defendant will not support a tort claim if the plaintiff cannot assert wrongful conduct beyond the breach of contract itself.") (quoting *Data Mgmt. International, Inc. v. Saraga*, 2007 WL 2142848, at *3 (Del. Super. July 25, 2007).
[25] *Universal Am. Corp. v. Partners Healthcare Sols. Hld'g, L.P.*, 61 F. Supp.3d 391 (D. Del. 2014).

12.     Unlike in the decisions cited by Defendants, the Court did not solely rely on omissions in determining that SPA Section 9.1 did not bar Count I.  The Court noted that Wind Point adequately alleged that Defendants fraudulently concealed material facts prior to closing, and that Defendants made false statements (which were subsequently re-confirmed) regarding manufacturing variances, the failure to record certain reserves, and overstating working capital.[26]

13.     As to Rule 42(b)(iii)(G), the Court does not believe the litigation would be terminated as to Insight Equity Management and Rosewood Private Investments if the Opinion were reversed as to its interpretation of SPA Section 9.1.  A contrary interpretation of SPA Section 9.1 would not result in the dismissal of Count I because the Court found that the fraud claim is based on conduct that is separate and distinct from the conduct that constitutes a breach of the SPA.  Specifically, the Court stated, "…the alleged fraudulent acts are outside the SPA and thus the non-reliance provision does not apply to Wind Point's claim."[27]  In addition, the Defendants are not seeking interlocutory review of the Opinion's ruling as to Count II.  Count II is a claim under the TSA.  Texas law provides that anti-reliance clauses do not apply to claims under the TSA.  As such, even if Defendants succeed on appeal, this civil action will be going forward on Count II.

14.     For the reasons set forth above, the Court does not believe certification would promote the most efficient and just method to resolve this case.  Accordingly, the likely benefits of interlocutory review do not outweigh the probably costs, such that interlocutory review is in the interests of justice.  The Court finds, therefore, that Defendants have not met Rule 42's strict standards for certification.

---

[26] *See, e.g.*, Compl. ¶¶ 94, 183–184, 227, 239.
[27] Op. at 30-31.

## CONCLUSION

**IT IS HEREBY ORDERED** that certification to the Supreme Court of the State of

Delaware for disposition in accordance with Rule 42 is **REFUSED.**

Dated:  September 15, 2020
Wilmington, Delaware

*/s/ Eric M. Davis*
Eric M. Davis, Judge